ADOLPH VAVRA ET AL., APPELLEES, V. FRED H. CLARIDGE ET AL., APPELLEES: JAMES E. HART, RECEIVER, APPELLANT.

FILED JULY 31, 1924. No. 23162.

1. Contracts: RESCISSION. One who seeks to rescind a contract, the execution of which was procured by fraud, must act within a reasonable time after the discovery of the fraud. A delay of two weeks, when no injury is shown to have accrued to the adverse party, is not an unreasonable delay.

2. Banks and Banking: TRANSFER BY OFFICER: WANT OF CONSIDERATION. When property is transferred to a bank by an officer thereof without consideration, the bank acquires no greater right than that of the transferrer.

3. ——: DEPOSITS: SUBROGATION. Where money is deposited in a bank in the name of a party, which in equity belongs to another, the equitable owner in a proper action may establish his ownership to the fund, and thereby becomes subrogated to the rights of the original depositor, and entitled to be paid out of the guaranty fund.

4. Evidence examined, and *held* sufficient to sustain the judgment.

APPEAL from the district court for Seward county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Gaines, Van Orsdel & Gaines,* for appellant.

*Norval Bros., Colman, Landis & Mastin, Thomas, Vail & Stoner, James A. Clark, J. A. Singhaus, E. B. Carrigan, F. Dolezal,* and *E. A. Coufal, contra.*

Heard before MORRISSEY, C. J., LETTON, DAY and THOMPSON, JJ., and BLACKLEDGE, District Judge.

DAY, J.

On May 29, 1920, Adolph Vavra and Ruzena A. Vavra, his wife, brought this action against Fred H. Claridge to rescind an exchange of lands made between the parties, upon the ground of misrepresentation on the part of Claridge and his agent in procuring the exchange. Other parties who had acquired an interest in the lands traded by plaintiffs were made defendants. The plaintiffs tendered back to Claridge a deed to the lands received by them, and prayed that the lands conveyed by them be restored; that a certain note and mortgage for $68,610 executed by them as a part of the transaction be canceled and set aside; and for other equitable relief. Claridge answered denying that there was any misrepresentation in procuring the exchange of the lands. Anton Policky and his wife answered that they in good faith had purchased from Claridge 166 acres of the lands received by him in the transaction; that they paid Claridge $3,760 in cash, and executed and delivered to him two notes for $10,000 and $15,000, respectively, secured by mortgages upon the lands purchased and also upon other lands. They prayed to be dismissed. Pending the litigation the Banking House of A. Castetter, of which Claridge was president, failed, and James E. Hart was appointed receiver of the bank. On April 27, 1921, Hart, as receiver, filed a petition of intervention claiming that the bank in due course of business received from Claridge certain deeds and assignments which conveyed to the bank the following property in controversy in this action: 340 acres of land in Seward county, Nebraska; 160 acres in South Dakota; a note and mortgage for $68,610 executed by plaintiffs; and two notes aggregating $25,000 executed by Policky and wife to Claridge as a part of the purchase price of 166 acres of the land sold by Claridge. The receiver denied that there was any fraud in the transaction between the plaintiffs and Claridge. The plaintiffs tendered issue with the receiver as to the bank's good faith ownership of the lands, as well as the notes, and also claimed that the $3,760 in cash paid by them was deposited in the bank by Claridge; that in equity this sum was held by the

bank in trust for the plaintiffs; and they asked that this sum should be paid to them as a depositor in the bank. Other pleadings were filed by other parties which seem unnecessary to be considered.

Upon the issues thus tendered the trial court found generally in favor of the plaintiffs, and entered a decree restoring to the plaintiff Adolph Vavra the title to the 340 acres in Seward county held by the bank, which it had received from Claridge, and canceled the note and mortgage for $68,610 executed by plaintiffs to Claridge. The court also found that Anton Policky and his wife were good faith purchasers of the 166 acres from Claridge, the title to which was in Ruzena A. Vavra before the trade was made, and decreed that the two notes aggregating $25,000 executed by Policky and wife be transferred by the bank to Ruzena A. Vavra; that the bank also transfer the title to the 160 acres in South Dakota to Ruzena A. Vavra, and that she recover a judgment against the bank for $1,531.33, the balance due upon an accounting of the $3,760 deposited in the bank by Claridge. From this decree Hart, as receiver, has appealed.

It appears that in August, 1919, Claridge was the owner of a tract of land in Burt county, consisting of 680 acres, upon which there was a mortgage of $68,000. He had purchased this land a few months before for $150 an acre, paying $34,000 in cash, and executing a mortgage for the balance of $68,000 due in 10 years. He listed the lands for sale for $300 an acre with certain real estate agents, among them being the defendant James M. Dixon. Vavra was the owner of 340 acres of land in Seward county, and his wife was the owner of 166 acres in Seward county and also held the title to 160 acres in Lyman county, South Dakota. The Seward county farms were subject to a mortgage of $35,000. After some negotiations between the plaintiffs and the agent, Dixon, a contract of exchange of lands was entered into between Claridge and the plaintiffs. In making the exchange Claridge's land was considered worth $300 an acre, or a total of $204,000, Claridge's equity in the land

being $136,000. The value of the three tracts of land owned by the plaintiffs was considered to be $102,390, the plaintiffs' equity in their land being $67,390. The difference in the values of the respective tracts was $68,610, in favor of Claridge. The difference was to be secured by a note and mortgage executed by the plaintiffs upon the Claridge tract. A contract embodying these terms was signed by the respective parties on August 26, 1919, and later, on May 15, 1920, the deeds and mortgages of the respective parties were formally delivered. In the fall of 1919 the plaintiffs entered upon a part of the land and did some fall plowing. On March 1, 1920, the plaintiff and his family moved upon the Burt county land. The plaintiff testified that after the deeds had been delivered he discovered for the first time that the land was so near level that it would not drain. He also discovered that the land was not such as it was represented to be, and on May 31, 1920, he tendered back to Claridge a deed to the Burt county land, and demanded a rescission of the contract.

It is the theory of the plaintiffs that they were induced to enter into the contract of exchange of the lands upon certain representations of the defendant Claridge and his agent, upon which they relied, concerning the value, character of soil, slope and drainage of the Claridge land, and that the representations were not in fact true. It seems unnecessary to set out in any considerable detail the evidence, which covers 836 pages of the bill of exceptions. Some of the alleged statements made by the agent Dixon were mere matters of opinion, and would form no basis for a rescission of the contract on the ground of misrepresentation. We think, however, the evidence shows that misstatements were made with respect to the land being of sufficient slope to drain the surface water, which could not be discovered by the plaintiffs upon a reasonable examination of the land. Also, some statements were made with respect to the character of the soil, especially that part covered by grass, which was not apparent until an attempt was made to cultivate it. Among other things, Dixon stated that he

was well acquainted with the character of the soil of the entire valley; that the uncultivated lands were exactly of the same quality as that portion which was cultivated; that it was a black rich loam, no gumbo, that there was a fall of from 4 to 7 feet to the mile; that there was no trouble by water standing on it; that the water readily drained off; and no tiling was necessary. About 280 acres of the land was in cultivation, the balance being in grass. It appears that during the light rains in the early spring the soil readily absorbed the surface water falling upon the land, and farming could be carried on without serious inconvenience. After heavy rains which occurred in the middle of May, the water would not drain off the land at all. It was shown that, instead of having a fall of from 4 to 7 feet to the mile, the general average was from 1 1-2 to 2 feet to the mile; that the uncultivated land was what is known as "gumbo," and required tiling before it could be successfully cultivated.

The appellant contends that the evidence shows that the land did have a slope of from 4 to 7 feet to the mile. This is true if the calculation is made from the highest point on the land. It appears that there was a high point which abruptly sloped to the general level of the land. Taking the entire testimony, it is clear that the representation was intended to create the impression that the water would readily drain from the land and not interfere with farming. Without further reviewing the testimony, we are convinced that the evidence upon the issue of fraud fully sustains the finding of the trial court.

It is urged by the appellant that the attempted rescission was not timely made, and that therefore the plaintiffs may not recover in this form of action. The rule is well settled in this state that one who seeks to rescind a contract of purchase upon the ground of fraud, must act promptly upon discovery of the untruthful statements respecting the subject-matter of the purchase. *Pollock v. Smith,* 49 Neb. 864. We think in the case before us the rescission was timely made. The matter of whether the

water would readily drain from the land could not reasonably be discovered until the period of the heavy rains, which came the middle of May. The rescission was tendered and suit instituted within about two weeks from the discovery of the real conditions. No injury is shown to have accrued to the defendants on account of the delay in rescinding the contract during that period.

It also appears from the record that Claridge assigned to the bank the note and mortgage for $68,610; that he assigned to the bank the two notes and mortgages aggregating $25,000, executed by Policky; that he deposited in the bank $3,760, being the cash payment received from Policky; and also executed a deed to the bank to the 340-acre tract in Seward county, and the land in South Dakota. Claridge testified that there was no consideration moving from the bank for these conveyances. It seems clear, therefore, that at the time the bank failed, it had no greater title or right than Claridge to the notes, mortgages and deeds above described.

It is finally urged that the court erred in rendering a judgment in favor of the plaintiffs against the bank for $1,531.33. While not specifically stated, it seems clear that this judgment was more than an allowance of the amount as a preferred claim against the bank. The evidence is clear that the deposit in the bank made by Claridge was the proceeds of the cash payment made by Policky upon his purchase from Claridge of the Seward county land. Upon a balancing of the accounts of moneys received and paid out by Claridge and the plaintiffs, upon their respective lands, the sum deposited in the bank was reduced to $1,531.33. It seems clear that Claridge was a depositor in the bank, and that the amount of his deposit was protected by the guaranty fund. In equity Mrs. Vavra was the owner of the 166 acres, and so became subrogated to the rights of Claridge in this deposit. The judgment of the trial court holding that the sum of $1,531.33 was a claim against the guaranty fund in favor of Mrs. Vavra appears to be fully sustained. As between the plaintiffs the court did not at-

tempt to apportion their respective rights.

. Upon a consideration of the entire record, we are satisfied that the decree of the trial court was right, and the judgment is, therefore,

AFFIRMED.

Ncte—See Contracts, 13 C. J. sec. 671; Banks and Banking, 7 C. J., secs. 15, 223 (1925 Ann.)—Vendor and Purchaser, 39 Cyc. p. 2067.